IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFF AIDNIK

        Plaintiff,                            No. 2:09-cv-2271 WBS KJN (TEMP) P

   vs.

SHAWN O'CONNER, et al.

        Defendants.                FINDINGS AND RECOMMENDATIONS

                                   /

        Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with an action under 42 U.S.C. § 1983 and state law. He alleges that defendants O'Conner and Russell were deliberately indifferent to his safety by exposing him to asbestos and lead during a demolition work project at the California Medical Facility, in violation of the Eighth Amendment.

        Russell was served with process[1] and has filed a motion to dismiss, alleging: (1) plaintiff failed to exhaust the prison grievance process before filing this lawsuit; (2) workers'

---

[1] The summons directed to O'Conner was returned unexecuted, with a notation indicating that he could not be located in the California Department of Corrections and Rehabilitation's ("CDCR") database. The court advised plaintiff that he must provide additional information to serve defendant O'Conner, see Dkt. # 17, but to date plaintiff has not provided any additional information to complete service. Accordingly, the undersigned recommends that defendant O'Conner be dismissed from this action.

1

compensation is plaintiff's exclusive remedy; (3) plaintiff's tort claim was untimely, barring any negligence claim; and (4) plaintiff's request for injunctive relief is moot.

I.  Plaintiff's Allegations

Plaintiff alleges that in March 2006, he was instructed to assist in the demolition of the photo lab at the California Medical Facility ("CMF") in Vacaville, California. See Complaint at 9 (Dkt. # 1). About one week into the project, a supervisor told the workers onsite, including plaintiff, to stop. Id. Plaintiff never resumed work at the demolition site. Instead, "an outside company" specializing in asbestos removal took over the project. Id.

Plaintiff alleges that, despite the work stoppage, he did not learn of the presence of asbestos and lead at the demolition site until he received an occupational injury or illness report on May 26, 2006. Id. at 7. He also states that on August 16, 2006, the California Compensation Insurance Fund sent him a notice that "liability for this injury had been accepted." Id.

Plaintiff alleges that defendant Russell, a secondary supervisor in plant operations with the CDCR, knew about the presence of asbestos throughout CMF. See Complaint at 7. He avers that Russell was aware that the same "outside company" had removed asbestos from the gym restroom at CMF only a week before the demolition of the photo lab began. Id. Plaintiff alleges Russell acted with deliberate indifference to a serious risk to plaintiff's health when he allowed plaintiff "to work and remove these deadly contaminates with no proper training or safety gear." Id.

The complaint states that as a direct result of plaintiff's handling asbestos and lead, he suffers respiratory distress and requires respiratory treatment four times a day. Id. at 9. Plaintiff seeks injunctive and declaratory relief and compensatory and punitive damages.

II.  Procedural Background

Plaintiff brought these same allegations against defendant Russell in this court, in Civil Action No. 2:07-cv-1273 MCE EFB. In that case, the court dismissed without prejudice

plaintiff's claim that Russell was deliberately indifferent to the safety risks posed by asbestos at the demolition work site where plaintiff was assigned.  The court found that plaintiff had failed to exhaust administrative remedies with regard to allegations of asbestos exposure in March 2006.  See Civil Action No. 2:07-cv-1273 MCE EFB, Dkt. # 62 (recommending dismissal) and Dkt. # 65 (adopting the recommendation and dismissing the case).  The magistrate judge's recommendation also stated that "[d]ismissal without prejudice may permit plaintiff to file a new action upon exhaustion of the prison grievance process."  Civil Action No. 2:07-cv-1273 MCE EFB, Dkt. # 62 at 4.[2]  Indeed plaintiff filed an inmate grievance after his first lawsuit was dismissed, and he states in the instant complaint that the grievance process is now complete.  See Complaint at 3.  However, defendant Russell again moves to dismiss on the ground that plaintiff did not fully exhaust the grievance process.

       III.      Failure to Exhaust Administrative Remedies

A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact.  Id. at 1120.  If the district court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice.  Id.

The exhaustion requirement is rooted in the Prison Litigation Reform Act ("PLRA"), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  CDCR regulations provide administrative procedures in the

---

[2] In that first action, plaintiff conceded that he had not even initiated the grievance process in seeking redress for his exposure to asbestos or lead.  He appears to have argued that he exhausted his state remedies when the state employer (presumably, CDCR) accepted liability for the work-related injury.  As the court explained, that fact "has no bearing on whether plaintiff satisfied the exhaustion requirement."  Id.

form of one informal and three formal levels of review to address plaintiff's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a prisoner has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5.

Under CDCR regulations, an inmate must file his prisoner grievance within fifteen days of the events grieved.[3] If a plaintiff failed to exhaust available administrative remedies by filing a late grievance, his case must be dismissed. Woodford v. Ngo, 548 U.S. 81 (2006). Exhaustion during the pendency of the litigation will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002). Exhaustion "'means using all steps that the agency holds out, and doing so properly....'" Woodford, 548 U.S. at 90 (citation omitted). Therefore, an inmate must pursue a grievance through every stage of the prison's administrative process before a civil rights action is filed, unless a he can demonstrate a step was not "available "to him.

Defendant bears the burden of proving plaintiff's failure to exhaust. Wyatt, 315 F.3d at 1119. The court resolves all ambiguities in favor of the non-moving party. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

A. Analysis

Defendant Russell submits a sworn declaration of D. Foston, who is Chief of the Inmate Appeals Branch ("IAB") of the CDCR. The IAB receives inmates' appeals at the "Third Level," which is the final stage of the grievance process.   Foston states that "Plaintiff Aidnik submitted a work incentive appeal on July 20, 2009, related to the [asbestos] incident. (Log No. IAB # 0900912.) This appeal was screened out on August 17, 2009, because it concerned a 2006

---

[3] California regulations do not require an inmate to specifically identify a prison official in a grievance. Therefore, an inmate need not name a particular individual during the grievance process in order to name that person as a defendant and meet the PLRA's exhaustion requirement when he files suit. See Jones v. Bock, 549 U.S. 199, 218-19 (2007); Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005).

4

incident, and the appeal had been screened out at the institutional level." Declaration of D. Foston at ¶ 11 (Dkt. # 27-2). However, the August 17, 2009 screening letter from the IAB is not entirely consistent with Foston's suggestion that plaintiff's appeal failed because it was submitted too late. Instead, the letter states, rather cryptically, that plaintiff's appeal was "being screened out and returned to you" by the IAB because "[y]our appeal was rejected, withdrawn or cancelled at the institution level." Id. at 9. The IAB letter simply gives the conclusory explanation that plaintiff's appeal was rejected at the Third Level of appeal because it was rejected at the previous, institutional level. But, for whatever reason, defendant Russell submits no document stating why the appeal was rejected at the institutional level, nor is there any statement from any stage of the grievance process confirming that the appeal was rejected for being filed too late.

Were this inconclusive collection of evidence all that the court had to decide the exhaustion question, the ambiguities left by the defendant's inexplicable failure to submit easily obtainable, written proof of the substantive reason for the IAB's decision would require the court to find that defendant has not carried his burden of proving non-exhaustion. See Estelle, supra. Defendant, however, has the good fortune of plaintiff's own submission regarding the reason his appeal failed: well before defendant filed the motion to dismiss, plaintiff filed a notice with the court that he had exhausted all administrative remedies, explaining that "on August 17, 2009, he received a letter back from N. Grannis, Chief of Inmate Appeals, rejecting his appeal do [sic] to time." Plaintiff's Notice of Exhaustion (Dkt. No. 10). Again, the letter from the IAB does not mention untimeliness as a reason for the appeal's rejection. Nevertheless, plaintiff effectively concedes that he was screened out of the appeals process for filing a grievance too late. The three years that passed between his exposure to asbestos and his initiation of the grievance process supports his concession.

As stated above, if a plaintiff failed to exhaust available administrative remedies by filing a late grievance, his case must be dismissed. Woodford, supra. Moreover, "concession

to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies." Wyatt, 315 F.3d at 1120.  The court sees no exception applicable here.[4]

In light of plaintiff's concession that his appeal was rejected as untimely, the court finds that his case must be dismissed.  Having so found, the court need not address defendant's other arguments for dismissal.

Accordingly, IT IS RECOMMENDED that:

1. Defendant Russell's motion to dismiss (Dkt. # 27) be granted.

2. Defendant O'Conner be dismissed from this case

3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 14, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

aidn2271.57

---

[4] In his opposition, plaintiff appears to be under the mistaken belief that when this court dismissed his first action, it gave him a fresh start within the CDCR's grievance process.  To the contrary, the existence of certain exceptions to the exhaustion requirement does not confer on the court authority to waive the timeliness requirements that the CDCR has set for its own administrative remedies.  Rather, the court said only that dismissal of the first case without prejudice "may permit plaintiff to file a new action upon exhaustion of the grievance process." Civil Action No. 2:07-cv-1273 MCE EFB, Dkt. # 62 at 4 n.3 (emphasis added).  In finding now that plaintiff filed an untimely grievance, the court necessarily finds that he has not exhausted the grievance process.